We'll hear the first argument in Abdul-Aziz v. National Basketball Association. Good morning, Your Honors. Jason Milosa on behalf of Zayd Abdul-Aziz. May it please the Court, we brought this appeal to review the District Court's decision to dismiss Mr. Zayd Abdul-Aziz's denial of benefits claim under Rule 12b-6. The foundational basis for it is that the law required the District Court to draw all reasonable inferences in favor of Mr. Zayd Abdul-Aziz, and we believe that the District Court did not do that for these two fundamental reasons. We believe that there are two primary issues in this case that can be distilled down to this. The first is, if a collective bargaining agreement provides increased benefits to all retirees who received the life annuity, and regardless of their date of employment, does that additional benefit apply to recipients of the actuarial equivalent? The Joseph Court seems to be the first court, the Fifth Circuit, to address, my home court, seems to be to have addressed this decision, and what they explained was this. Different workers who work at different times under different policy provisions can be provided different benefits. You're only guaranteed the benefits that were promised to you while you were working. However, in dicta, the Joseph Court recognized, but that does not give you the right to go back in time and dissimilarly treat workers who work under the same policy provisions at the same time, because if you give life annuity recipients additional benefits and you leave out the actuarial equivalents, you're actually violating ERISA because you're creating different classes of retirees, and that is what the anti-cutback rule was designed to prohibit in the actuarial equivalent rule. You have to treat all workers the same at all times throughout their retirement. If you give something to a life annuity recipient, you have to give it to an actuarial equivalent because otherwise the retirees are not getting the promise of the same benefit. This court in Esdin recognized that right. The court in Lightfoot recognized that right. The coal in Cole recognized that right. In each of those decisions, usually it applies to when a retiree receives a lump sum distribution and then the plan does something to increase the additional benefits. In all of those cases, every court said if the COLA was an accrued benefit and it was to the life annuity recipients, you have to give it to the actuarial equivalent recipients. Also IRC section 1.415 example 3 that we pointed out, it specifically recognizes that just because you receive a lump sum distribution, that does not destroy your right to receive additional benefits after that time. If the plan provides an accrued benefit after you receive a lump sum distribution, you're entitled to additional benefits. That's what the IRC recognizes. Now if you received your maximum, the maximum money under 415, the Secretary of the Treasury's COLA, just because the Secretary of the Treasury increases that 415 limit each year, that does not give you a right. So if the Secretary increased the COLA for five years, that does not mean every single year your lump sum distribution would increase. But what example 3 recognizes is that if the plan trustee at year five does something to give you an accrued benefit, then the new 415 limit would apply and you can get additional benefits up to that point. So the first thing that has to be grappled with by the court is the fact that when the NBA in 1995 issued their collective bargaining agreement and they gave every single retired player an increased benefit for those life annuity recipients, that was an additional benefit that was an accrued benefit under the plan. It was negotiated via contract. It was not gratuitous. The problem is that the plan did not want to pay it to the actuarial equivalents. They only wanted to pay it to the life annuity recipients, and that's where it violated ERISA. Is that an issue for us, or is it only whether your claim is timely, at least on this appeal? Well, I think that the question is if Mr. Aziz has the right, should be recognized first, because that's the next issue which I was going to transition to. It wasn't dismissed on that ground. It was not. Right. But the second issue, if Mr. Zayd Abdul Aziz did have a right to an additional benefit, did the mere identification of a scheduled end date in 1991 forever and permanently require a forfeiture of that right? And the answer to that question is no, and this is why. The clear repudiation rule was specifically designed to address when a beneficiary recognizes that they have an injury or an abuse. If you take out the COLA in 1991, ERISA required the plan to identify a scheduled end date. So if there was never any COLA adjustment, the scheduled end date in and of itself does not give the beneficiary the idea that there's an abuse, but that's I would suggest to you that you address the October 30, 1997 letter you sent, because it doesn't say only that the benefits are scheduled to cease July 31. It says that effective September 1, 1996, his monthly benefit was increased to a certain amount pursuant to the collective bargaining agreement. To the extent that the district court or your adversary think that that put your client on some kind of notice that there was an increase so as to require him to complain if he thought the increase was not accurately calculated, what's your response to why that wouldn't make your claim untimely here? So if you look at the panoply of cases where the clear repudiation rule is applied, in they were supposed to, or they didn't pay enough. And that's what I'm suggesting to you, that you got an increase and to the extent you don't think it's enough, that would be the argument. You were obliged to bring your lawsuit within the statute of limitations from that time. So two points. One, the increase clearly would not put someone on notice that there's an abuse. You wouldn't think that someone is abusing you by giving you an increase, number one. Number two is we never allege that during the 10-year window, the payments were erroneous. We've always, and what I told the district court is that when that letter was written, what it said was true. Mr. Aziz's benefits were scheduled to cease on August of 2001, but the problem arose the next calendar year in 2002 when they increased the normal retirement benefit again. But isn't your point that once they entered into an agreement before 2001 that provided for those increases, your clients, the amount your client received before July 31st, 2001, had to be calculated to take account of those future increases? Or have I misunderstood your argument? Well, there's no way to know exactly what those increases are going to be because the Secretary of Treasury gives a new amount every year. Well, are you saying your client was entitled to payments after 2001? Yes, ma'am. What we are saying is that everything that was paid during the 10-year window upon information and belief was appropriate. The problem in this case arose because in 2002, on the benefits commencement increase date, I think that's the official language that the plan uses, that's when, sometime in 2002, we don't know what that date is, they increased the normal retirement benefit for all life annuity recipients. No information, no documentation, nothing whatsoever was given to Mr. Zayd Abdul-Aziz to put him on notice of this. And what is the effect of that exactly? The effect of that is that it violated ERISA because of the first point I made earlier. When the NBA in 2002 elected to give life annuity recipients increased additional benefit, but they left out Mr. Aziz or anyone else who was an actuarial equivalent, that created a disparity between the two parties. It excluded him, if I understand your argument, because his eligibility to receive benefits had ended. Well, that's the issue here. We allege that it did not. If you read Cole and if you read Esden, those cases are very clear that just because you receive a lump sum distribution, that does not end your right to get additional benefits after that date. Your client wasn't receiving a lump sum distribution. He was receiving distributions periodically up to July 31, 2001. He opted for a distribution scheme that ended in July of 2001. See, I had thought your complaint was that given the increase they gave in the modified collective bargaining agreement, that they had to recalculate his benefits and give him an increase not just to 2479, but to account for what the future increase. I thought, I'm not addressing the merits of that, but that's what I thought your claim was. Instead, are you now telling us you think your client was entitled to continued benefits after 2001? Yes, ma'am. The defendants have tried to say that we're claiming that the payments made in the 10-year window were wrong. And as I pointed out to the district court, and as I hoped I pointed out to this court in my reply brief, that is erroneous. We are not claiming that the payments made during the 10-year calendar were wrong. What we're claiming is that by the NBA agreeing to give life annuity recipients every single year an increase in their benefits in accordance with Section 415, they created dissimilarity in the players who worked at the same time under the policy provisions. All right. Well, let's stick with the statute of limitations, and I'm more concerned because then I have a real problem with why you weren't on inquiry notice. You knew that you were getting an increase up to 2001. You weren't on inquiry notice to find out exactly what that increase provided so that if your claim is, well, we were entitled to keep getting paid after 2001, the document that would have told you that was the collective bargaining agreement. You could have gotten a copy of that as soon as you got notice in 2007 that that was the basis for the increase. And I understand what you're saying, Your Honor. 1997, rather. But here's the problem with that perspective, is that you're putting the onus on the beneficiary to figure it out. When the clear repudiation rule, the onus is on the plan to notify the beneficiary of his rights. And that is a critical, fundamental distinction in this case. What the DeVito case recognizes is that you can't expect retired basketball players to be ERISA watchdogs and to figure all of this out. It is the plan's responsibility as the sophisticated trustees of these pension plans to, in plain language, notify the beneficiary of their rights. And in this case, what we factually showed the court was that in 1997, when Mr. Aziz's benefits increased, he did not even know why. He had to write the NBA and say, why are you giving me more money? This doesn't make sense. And that's when the NBA wrote back and said, well, there was a collective bargaining agreement in 1995 that allowed you to get more money. But your benefits are scheduled to cease. That's the problem, though. Right? You're told that in 1997 in the letter that I read. Yes, ma'am. You're at least told that the collective bargaining agreement is the reason you're getting this money. And you're saying that that doesn't put you in a position where knowledge can be imputed to you that there's enough information to provide a basis for a claim. You're getting more money through 2001. Why wouldn't you automatically assume you'd be entitled to it after 2001 on the theory you've put forth today? Because they were basically reiterating what he believed when he signed the documents in 1991 before there was ever a collective bargaining agreement, that he was expected to end in 1991. So they basically just played on his belief and led him into a lull in a state of believing that his benefits should have ended in 2001. But that's the problem. As sophisticated lawyers, Mr. Friedberg came into this case first. I came into this case second. And as not being an expert in ERISA law, it was extremely confusing trying to figure this case out and how everything played. So my fundamental point is this. The mere identification of the scheduled end date by itself should not be a basis under the clear repudiation rule to eliminate a beneficiary's additional right to benefits. That would violate ESDN, it would violate COLE, it would violate JOSEPH, because you're basically saying that as soon as you receive your lump sum distribution or as soon as your 5-year or 10-year is done, that's it. You have no more right to any more additional benefits. And that is not the law. And moreover, in this case, from a statute of limitations standpoint, you're basically saying, Mr. Aziz, you received more benefits than what you believed you should have, but you should have known to go ahead and file a lawsuit against the NBA to protect your rights? That is not what the case law says. The case law is they cut you off, so you should have known to file a lawsuit. They didn't pay you enough, so you should have known to file a lawsuit. In this case, you're going to affirm a district court ruling that basically says, well, they were paying you more than what you thought they should, but you should have filed a lawsuit. Okay. Mr. Melanzon, I've given you some extra time, of course, and we appreciate it. What do you want from us? What would be the decree that you would want from this court? I would pray that your honors would perform a de novo review and reverse the district court and explain. What was the state of play in the district court at the time that it entered judgment? Did you have, did you have, um, discovery? No, your honor. Would discovery be useful? What is it that, what is it that would happen on, on the, in this putative remand? I believe that ultimately there, there would be a question for the trier of fact to determine, which is what is the reasonable interpretation of how the scheduled end date should be applied? In my opinion, the district court applied it extremely broadly and said, well, it said it cut it off on this date, so you were cut off. That's not the law. What my argument is, is that rule 12B-6 requires the district court to give all reasonable inferences in favor of the plaintiff and that the scheduled end date by itself is not sufficient notice of an injury because, because that is what is, it is required at the beginning when you sign the documents. I take it you would, upon a putative remand, you're ready to go to trial? Well, I, I believe that there are, there are some gaps in the, we, we performed an exhaustive internet search to try to find any collective bargaining agreements between the NBA. The record is so voluminous because we tried to attach all of those to our complaint to show the complexity, the complexity that Mr. Abdulaziz or any other individual of the court is faced with trying to figure all this out. Um, so there are some gaps. We believe that limited discovery would be beneficial. Thanks very much. Thank you. We reserve, we'll hear from opposing counsel. May it please the court. My name is Myron Rumeld of the Proscow Firm, co-counsel for the Appalee National Basketball Association Players' Pension Plan. This lawsuit was commenced in November 2017, more than 17, more than 16 years after the plaintiff, Aziz, finished receiving his retirement benefit payments from the pension plan. In his complaint, Aziz contends that he should have been allowed to receive additional benefits that were rewarded to other participants who were elected to receive a normal retirement annuity but were not made available to participants like Aziz, who were elected to receive their benefits sooner and had finished receiving all of their benefits before these new benefits were even provided for. On at least five occasions before 2001, Aziz was explicitly told that by July 2001, he will have received all his benefits to which he was entitled and that he would receive no benefits after that. That was because he had specifically chosen to receive a form of payment called a 10-year certain benefit, which means exactly what it says, that he's entitled to receive all his benefits in 10 years rather than to wait for a normal retirement annuity like other participants may have elected to do. Now, by virtue of these communications, the district court correctly concluded that Aziz knew or should have known by 2001 at the very latest that any claim to additional benefits after 2001 had clearly been repudiated and thus that Aziz's claims were time-barred. Now Aziz is contending that these communications could not have repudiated claims for additional benefits that were implemented by the plan after 2001. We believe that the unequivocal communication that all benefits would cease and that Aziz would receive nothing after 2001 makes it pretty clear that it encompasses all benefits, including future benefits. But as the district court recognized, any doubts about that, about the unequivocal nature of those communications, are resolved by two additional significant pieces of information, which I think Your Honor has already pointed to. First, three of the five communications were received after the plan started implementing these benefit increases, including for Mr. Aziz. Thus, Aziz knew or should have known that the unequivocal statement that he was not going to get anything after 2001 also applied to benefit increases because he had started receiving some. Second, despite the increases that commenced midway through his 10-year cycle, his benefit payments did in fact cease in July 2001 exactly according to the original schedule. So as the district court concluded, the plan's repeated written warnings throughout the 1990s, followed by the actual cessation of any and all benefit payments on July 31, 2001, served as a clear repudiation by the plan of any claim to plaintiffs, by plaintiffs to future benefits. Now it's also noteworthy that these post-2001 increases were the same types of benefit increases that Mr. Aziz had begun to receive beginning in 1996. The 1995 collective bargaining agreement put in place a process pursuant to which each time the maximum benefit permitted by the tax law was increased, the collective bargaining parties would arrange to amend the plan so that it would increase the benefit commensurate with what the law would allow. That was what the 1995 collective bargaining agreement provided. And then beginning in 1996, Aziz starts getting that benefit. The 1995 collective bargaining agreement and the plan document also made very clear that those increases would apply only on a prospective basis and only for the period of time that a participant was otherwise scheduled to receive benefit increases. As Your Honor pointed out, in 1997, Aziz's attorney sent a letter of inquiry as to what the source of these benefit increases were, and he was specifically told these increases were pursuant to the collective bargaining agreement, and your benefits are still going to cease in 2001. So first of all, the statement that the benefits will cease in 2001, as I previously said, was an indication that there weren't going to be any further benefit increases for Mr. Aziz after that, a clear repudiation. And secondly, pursuant to the inquiry notice standard that Your Honor alluded to, surely if Mr. Aziz's lawyer was told these increases were made pursuant to the collective bargaining agreement, he could have obtained the collective bargaining agreement and he would have seen exactly how these increases were going to work. They were not going to apply to anybody who had already received their benefit payments, and they were going to only apply on a prospective basis to increase the benefits that a participant was otherwise scheduled to receive. You refer to Mr. Abdul Aziz's lawyer. Did you know that he had a lawyer, or was some notice sent to his lawyer? Well, for purposes of motion to dismiss, we only know what's in the record that was attached to the complaint. So what's attached to the complaint is the correspondence that's written to his attorney. So that's what we know. Your Honor had questioned before what would happen if the case was remanded. I certainly hope that's not going to occur. But if the case were remanded, it seems to me we already have enough evidence to show that Mr. Aziz was new or should have known about the claim by virtue of the five pieces of correspondence that we identified that were in fact identified in the complaint. The only thing that could happen with discovery is additional information showing that Mr. Aziz was on notice of his claim. Maybe he had access to a summary plan description, for example, which would have told him the same thing. But I don't think anything in discovery will subtract from the documentation that was already identified in the complaint in which we relied. Let me try to understand, help me understand the factual situation. In 2001, you notified Abdul Aziz that he would no longer receive benefits from the retirement plan, is that right? Well, we had, I think, already notified him in 97, 98, 99, and then it stops in 2001. 2001, but at that point, you had not made any cost of living adjustments, correct? No, we had made, so pursuant to the 1995 collective bargaining agreement, it basically did two things. It first brought everybody up to the maximum amount allowed by the law, and then said each year, if there's a cost of living increase, we will again make a benefit increase. And this is artfully done because contrary to, I think, what my adversary was implying, you can't accrue these increases in advance. That's the point of those regulations he cited. So for example, if a participant elects a lump sum, his lump sum can't reflect these future increases if it's going to cause his lump sum to be worth more than what an annuity at that time could be worth. So if the maximum annuity that somebody could get is, for example, $300 a month, and you tend to take a lump sum, you can't get a lump sum that's worth more than $300 a month even if your benefit was supposed to be $350. So you lose out on that by taking a lump sum. So what the plan, what the collective bargaining parties agreed was, since they can't accrue it in advance, what we'll do is we will sequentially amend the plan to provide these benefits as we're able to do so. So in 1996, there was an amendment bringing everybody up to the max, and then in 1997, 1998, and subsequent years, whenever there was an increase, Mr. Aziz got an increase, not retroactively, because retroactively would cause you to breach this 415 limit, but prospectively for the duration of his 10 years. And each time he gets the increase, he gets told it's ending in 2001, and in fact, it ends in 2001, which is exactly what the collective bargaining agreement contemplated. Okay? I think if there are no questions, I will rest. Thank you. Mr. Melanson, you have reserved some time. The issue with the 17 years is that, again, it's not on what Mr. Zaid Abdulaziz did. The reason why there's a 17-year gap is because the plan treated him as he was no longer a participant, when under the law, he should have been treated as a participant. Well, but the question for us today is not the merits question. It's when he knew that he had such a complaint. And I am just perplexed as to what more he needed to know beyond what he was told in that October 30th, 1997 letter I alluded to. That letter told him two things. One, he was getting an increase. And two, his benefits were going to cease on July 31st, 2001. To the extent your claim is those benefits should not have ceased, what more did you need to know beyond what you were told in 1997 in order to file suit? As I indicated, I think the issue is that the plan did never address, unlike the case in Dix, the plan never talked about COLAs whatsoever. It told him what he was getting now and it told him his benefits were going to cease. Are you suggesting that that would reasonably be read to suggest some of your benefits will cease? No, ma'am. As I indicated to the district court, what was written in October of 1997 was correct. As of that time, his benefits were, here's the point. That was the increase that was the basis for your claim that those increases had to continue. Here's what I explained to you. I just don't understand how you think that his benefits are scheduled to cease July 31st, 2001 is an accurate statement in 1997. How is that an accurate statement on your theory? Because if there was never any COLA increase after 2001, then his benefits would have ceased in August of 2001. Do you think it was possible that the collective bargaining agreement provided for increased benefits up to 2001 but not thereafter? No, ma'am. I'm saying that the way that the collective bargaining agreement was written, it did provide for additional benefits after August of 2001. I understand that. But I'm trying to figure out what your client reasonably knew when he got this letter or when his lawyer got this letter. Well, the law is very clear. We're not supposed to extrapolate what my client knew or didn't know. The law is what do the documents say. I understand that. And the documents seem to be pretty clear. So the only thing I'm asking you is what other reasonable interpretation could there have been? So here is my answer to your question. The increase in benefits does not suggest an injury or abuse. So the increase in benefits, as discussed in October of 1997, do not provide a foundational basis for the clear repudiation rule. That only leaves the scheduled end date. And my point is all that they did in that letter was reiterate the scheduled end date that was identified back in 1991 when there was no amendment to the policy, there was no issue of COLAs, there was no discussion about COLAs and how they would be applied either during the 10-year period or after the 10-year period. So my point is this. If you are going to have a ruling that says the scheduled end date of an actuarial equivalent forever forfeits your right to additional benefits, that is a fundamental change in the law. It overrules ESDN. It overrules all the cases that discuss an additional benefit being available after payment of, for example, a lump sum. For instance, to draw an example, if you receive a lump sum distribution, then technically that would be just like the end of the 10-year period after the fixed payment period or five-year, right? That's when your benefits, that's when you received your benefit. If you say that the scheduled end date negates your substantive right to additional benefits, then under no circumstance, the statute of limitations is going to operate as a substantive bar to a beneficiary receiving additional benefits after that time. And that is what the fundamental change is here. Under the clear repudiation rule, you're supposed to look at it and go, did the plan documents put the person on notice that their rights were being abused? In identifying a scheduled end date in 1997 that's consistent with the scheduled end date in 1991, four years before the COLA issue even arose with the 1995 collective bargaining agreement, that does not satisfy the clear repudiation rule. That's just simply reiterating what the individual knew.  Okay. Thank you, Your Honor. Well-reserved decision, well-argued on both sides, and we're grateful for it. Thank you. Thank you.